COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


PATTERSON BROTHERS PAVING, INC. AND
 NATIONAL GRANGE MUTUAL
 INSURANCE COMPANY                                    MEMORANDUM OPINION[*] BY
                                                     JUDGE JOHANNA L. FITZPATRICK
v.        Record No. 0436-07-3                           JANUARY 15, 2008

THOMAS EDWARD LACY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Scott C. Ford (Brian A. Richardson; McCandlish Holton, P.C., on
            briefs), for appellants.

            B. Patrick Agnew (Wilson, Garbee & Rosenberger, on brief), for
            appellee.

        Patterson Brothers Paving, Inc. and its insurer (hereinafter referred to as "employer")

appeal a decision of the Workers' Compensation Commission finding that Thomas Edward Lacy

(claimant) was terminated for justified cause but not such as to warrant a permanent forfeiture of

his disability benefits.  For the following reasons, we reverse the commission's decision and

remand for further proceedings consistent with this opinion.

                    On appeal from a decision of the Workers' Compensation
            Commission, the evidence and all reasonable inferences that may
            be drawn from that evidence are viewed in the light most favorable
            to the party prevailing below.  Also, "[w]e do not judge the
            credibility of witnesses or weigh the evidence on appeal."  Rather,
            we are bound by the commission's findings of fact as long as
            "there was credible evidence presented such that a reasonable mind
            *could* conclude that the fact in issue was proved," even if there is
            evidence in the record that would support a contrary finding.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83-84, 608 S.E.2d 512, 517 (2005) (*en banc*) (citations omitted).

## Procedural History

So viewed, the evidence proved that on August 29, 2004, claimant sustained an injury to his lower back arising out of and in the course of his work as an equipment operator/truck driver for employer. Employer accepted the claim as compensable, and the commission entered an award for lifetime medical benefits. Subsequently, the commission entered an award, pursuant to the parties' agreement, awarding claimant temporary total disability (TTD) benefits beginning August 31, 2004.

On May 26, 2005, June 27, 2005, and July 11, 2005, claimant filed change-in-condition applications. The basis for the application was that he returned to light duty work from May 5, 2005 through May 17, 2005, and he sought temporary partial disability (TPD) benefits for that period. He also alleged that employer terminated him on May 18, 2005, and sought a resumption of TTD benefits as of that date. On October 3, 2005, employer filed an application seeking termination/suspension of claimant's outstanding award. Employer alleged claimant refused selective employment provided by employer and terminated him for justified cause on May 18, 2005.

## Background

The medical records show that on May 5, 2005, Dr. Murray Joiner released claimant to return to light duty work with specific restrictions as to lifting, prolonged/repetitive bending, sitting, and standing. On that date, Dr. Joiner did not provide any written limitation on the number of hours claimant could work. However, claimant testified that Dr. Joiner told him his

restrictions were based on an eight-hour workday,[1] that employer had knowledge of the restrictions, and that employer allowed him to stop working after eight hours after he returned to light-duty work for employer on May 9, 2005, as a flagger. Employer denied any knowledge of this limitation, and the record shows that of the seven days claimant worked light duty from May 9, 2005 through May 17, 2005, on four of those days he worked in excess of eight hours.

On May 17, 2005, claimant was performing flagging duties at an intersection, which led to a main road where employer was doing paving work. Between 4:30 p.m. and 4:45 p.m. that day, claimant left his flagging position.[2] Claimant asserted he approached a Virginia Department of Transportation worker, gave the worker his radio, and told the worker that he was going to leave because his back hurt. Claimant denied that anyone associated with employer ever told him that he needed to check in before leaving the job site. Rather, he stated that "they had always sent somebody before, and [he] figured it was all right to leave because it was the end of [his] eight-hour shift."

It was undisputed that claimant's leaving his post on May 17, 2005 did not create a dangerous situation at that specific location. However, Kevin Nellum and Ralph Patterson, who testified for employer, stated that when claimant left his post without telling anyone, it did create a dangerous situation in another location where they were short a worker and could have used him. They also stated that employees were not allowed to leave without permission or informing a supervisor. When claimant arrived for work on May 18, 2005, he reported to the wrong job site because he failed to obtain his assignment the previous day from Patterson. Patterson

---

[1] Claimant testified that prior to his injury, a normal workday was twelve to fourteen hours.

[2] On cross-examination, claimant stated he had been assigned to that post at around 4:15 p.m. and left it around 4:30 p.m., or that he had been there about twenty minutes.

questioned appellant as to why he left without checking with him, and terminated claimant for leaving the jobsite without permission. Claimant apologized and went home.

Claimant admitted he never told anyone associated with employer that he thought he could only work eight hours or that he was having difficulty performing the flagging work. However, he claimed that on May 5, 2005, he told the R.N./medical caseworker, Carolyn Edelstein, about his limitation to an eight-hour day, and thought she would take care of it. Edelstein disputed his testimony.

Dr. Joiner's May 19, 2005 office notes contain an addendum, which states as follows:

> The patient reports he was terminated one day prior after leaving after eight hours of work. Prior to informing examiner of this he had asked whether or not the restrictions given 5-05-05 were based on an eight-hour day. He was informed that they were.

In response to subsequent questionnaires from counsel, Dr. Joiner agreed that his May 5, 2005 restrictions provided no limitation as to the hours claimant could work, as Dr. Joiner assumed an eight-hour workday. Dr. Joiner indicated that he first provided the hours restriction to claimant as of May 19, 2005. Dr. Joiner explained that claimant contacted him later about the time issue and he was given a note for eight hours. On January 17, 2006, in response to another questionnaire, Dr. Joiner agreed that there is no objective evidence why claimant could not have performed the flagging work assigned him by employer.

Based upon this record, the deputy commissioner found that claimant was terminated for cause on May 18, 2005, for walking off the job. The deputy commissioner specifically rejected claimant's testimony that he had been restricted to an eight-hour day and that he had told Edelstein about that restriction. The deputy commissioner credited the testimony of Edelstein, Patterson, and Nellum, indicating that claimant did not tell them of an eight-hour work restriction. In addition, the deputy commissioner noted that the evidence showed claimant had actually worked more than eight hours on several occasions. The deputy commissioner

concluded that claimant left the job site on May 17, 2005, in the absence of any known restriction. Thus, employer was justified in terminating claimant because "he left work without permission and without knowing whether his absence would either effect work operations or the other workers' safety." However, the deputy commissioner concluded that claimant's termination, while justified, was not of such a nature that his conduct should bar him from future benefits.

The full commission affirmed the deputy commissioner and found no reason to disturb the deputy commissioner's credibility determinations. It noted that the medical evidence reflected that Dr. Joiner did not issue an eight-hour work restriction until May 19, 2005, after claimant had been terminated, and that claimant's absence on May 17, 2005, caused problems for employer on that job. As a result, employer was justified in terminating claimant for leaving the job that day. However, the full commission also found that claimant's conduct was not so egregious as to warrant a permanent forfeiture of his benefits. The commission noted that "[w]hile the situation did cause the employer difficulty, we do not find the claimant's actions in leaving after working eight hours without checking out to amount to conduct that warrants a permanent forfeiture of disability benefits."[3]

### Analysis

In Artis, a majority of this Court recognized as follows:

> It is well settled that, "where a disabled employee is terminated for cause from selective employment procured or offered by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability." Thus, an employee "who is terminated for cause and for reasons not concerning his disability is not entitled to receive compensation benefits."

---

[3] The commission also found claimant did not cure his refusal of selective employment, thus he was not entitled to a resumption of disability benefits. Claimant did not appeal that finding to this Court.

- 5 -

As we have noted,

> "A justified discharge . . . does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reason[ ] for the discharge is for cause, or is justified for purposes of forfeiting benefits must be determined in the context of the purpose of the Act and *whether the conduct is of such a nature that it warrants permanent forfeiture of those rights and benefits*."

> Also, it is not necessary to prove "that the employee's wrongful act was intentional, willful, or deliberate in order to justify a termination for cause and a forfeiture of compensation benefits." Rather, all that is required is a showing: (1) that the wage loss is "properly attributable" to the wrongful act; and (2) that the employee is "responsible" for that wrongful act.

Artis, 45 Va. App. at 84-85, 608 S.E.2d at 517-18 (citations omitted). The majority in Artis recognized that in order to justify a termination for cause and a forfeiture of compensation benefits, a two-prong test must be applied to determine: (1) whether the claimant's termination was attributed to his wrongful act; and (2) whether the claimant was responsible for his misconduct. Id. at 85, 608 S.E.2d at 518. In applying the first prong of the test, we recognized that the overriding inquiry must be as follows:

> Was the claimant fired because of his disability, or was he fired because of his misconduct? In making this determination, the commission should "consider the nature of [the] conduct" alleged to justify the dismissal. Ultimately, the burden of proof is on the claimant to demonstrate that his termination was attributable to his disability rather than his wrongful act.

Id. at 85-86, 608 S.E.2d at 518 (footnote omitted) (citations omitted).

Thus, under the first prong of the test set forth by the majority in Artis, we must "consider whether [claimant] was fired because of his disability (e.g., because his disability prevented him from adequately performing his duties), or whether he was fired for another reason entirely." Id. at 86, 608 S.E.2d at 518. Without explicitly stating so, the commission in this case implicitly found that claimant failed to prove that his termination was attributable to his

disability, rather concluding that he was terminated because he left the jobsite on May 17, 2005, without notifying anyone, thereby creating a difficult situation for his employer. The testimony of employer's witnesses constitutes credible evidence to support that conclusion.

"[T]he critical inquiry . . . is not whether there is a causal relationship between the disability and the claimant's *misconduct*. Rather, we are concerned with the relationship between the disability and the claimant's *termination*." Id. at 88, 608 S.E.2d at 519. "[T]here must be an immediate, proximate nexus between the disability and the termination for the termination to be deemed 'attributable to' the disability." Id. (footnote omitted).

In this case, as in Artis, the immediate nexus is missing here - - claimant was terminated not because of his disability, but because he left the jobsite without telling anyone, causing employer a difficult situation with respect to the flagging operation. Claimant's "own willful, volitional misconduct constitutes an intervening cause sufficient to break that chain of causation." Id. at 88, 608 S.E.2d at 520. Because the commission's factual findings in support of its conclusion that claimant was terminated for reasons other than his disability are amply supported by credible evidence, the commission's finding is binding and conclusive upon us.

With respect to the second prong of the test set forth by the majority in Artis, i.e., in determining whether a claimant was responsible for his or her wrongful conduct

> the crucial determination is whether the claimant's misconduct was voluntary or involuntary. A disabled employee who engages in voluntary misconduct is deemed to have constructively refused an offer of selective employment, thereby justifying a forfeiture of benefits. In contrast, conduct that is involuntary does not justify a forfeiture of benefits because it is, by its very nature, beyond the employee's control and, therefore, not equivalent to a constructive refusal of selective employment.

Id. at 91, 608 S.E.2d at 521 (citations omitted).

Here, the full commission cited no case law in analyzing the termination issue and the record does not support that it conducted the required analysis as set forth in Artis whether

claimant was responsible for his misconduct by determining whether that misconduct was voluntary or involuntary. Rather, the commission simply concluded that while credible evidence proved employer had a reason to terminate claimant because he left his flagging post after working eight hours without notifying anyone, that conduct was not so egregious as to warrant a permanent forfeiture of benefits. The commission based that finding on the fact that no one had complained about claimant's work or attitude before he left the job on May 17, 2005, and Nellum's testimony that claimant's departure from his flagging post did not create a danger at that location because they were planning to move claimant to another location. Because the commission never engaged in the applicable legal analysis required by the second prong of the <u>Artis</u> test, we must remand this case for their consideration and to make findings employing the correct legal standard as set forth in <u>Artis</u>.

Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>